UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| VINCENT THOMAS, | ) |
| --- | --- |
| Plaintiff, | ) |
| | ) CAUSE NO. 3:14-cv-164-PPS |
| v. | ) |
| | ) |
| CITY OF MICHIGAN CITY, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

Vincent Thomas was fired from his job as a bus driver for the City of Michigan City after a video confirmed that he failed to stop at railroad tracks in violation of both Indiana law and Federal regulations. Thomas, who is African-American, says that he was the victim of race discrimination and that was the real reason for his termination. This case in now before me on the City's summary judgment motion. Because there is no evidence that the City's decision to terminate Mr. Thomas' employment was prompted by racial animus, the City's summary judgment motion [DE 62] will be **GRANTED.**

## Background

Thomas was hired by the City as a bus driver in 2007. [DE 63-1 at 7.] He remained employed in that capacity until his termination was upheld by the Board of Works in March 2013. [*Id.*] The City terminated Thomas after an incident that occurred on January 26, 2013. [*Id.* at 4.] On that date, while driving a bus during his work hours, Thomas crossed railroad tracks. [*Id.* at 4; DE 63-2 at 3, 14 (video recording of bus

manually filed with the Court).] Thomas' bus was equipped with a video camera recording the view through the windshield of the bus. The recording shows that Thomas slowed down as he approached the railroad crossing, but he did not come to a complete stop. [DE 63-2 at 14.] Both Indiana law and federal regulations – at I.C. § 9-21-8-39 and 49 C.F.R. § 392.10(a), respectively – require that a driver of a commercial vehicle come to a stop between fifty and fifteen feet before crossing a railroad track. Thomas testified that he was familiar with the rules regarding crossing railroad tracks. [DE 63-6 at 4.]

The importance of adhering to this safety regulation was made clear to Michigan City bus drivers roughly three weeks prior to Thomas' railroad track incident. Rob Strader, the Transit Director for the City of Michigan City, sent a memorandum to all bus drivers noting that stopping at railroad crossings is mandated by Federal law and attaching the Department of Transportation ("DOT") Regulations. [DE 63-2 at 5.] Strader wrote that the DOT Regulations provide a specific exception for one crossing, which is controlled by a stop light, but that all other crossings of railroad tracks needed to be conducted in accordance with the DOT regulations and the Indiana Commercial Driver's License manual. [*Id.*] The memorandum cautioned that "failure to perform the correct procedure at railroad crossings will not be tolerated. Everyone needs to understand that if you are found in violation of this federal regulation it will be deemed a violation so severe that *termination can be expected*." [*Id.* (emphasis added)] Thomas confirmed that he received the memorandum. [DE 63-3 at 4.]

2

Thomas was suspended pending his discharge five days after the railroad crossing incident. [DE 63-2 at 3-4.] The Employee Corrective Action Notice notifying Thomas of his suspension stated that not only did he fail to stop at the railroad tracks, but there were several other violations seen in the video from that day including speeding, following at an unsafe distance, and an unsafe lane change. [*Id.*] In addition, it noted that Thomas was suspended three times in the previous twelve months for failure to follow instructions. [*Id.*] (Thomas' December 2012 suspension was later overturned by the Michigan City Board of Works. [DE 63-2 at 7.]) Thomas filed a grievance in response to the Corrective Action Notice; he claimed that Michigan City was unfairly targeting him because of another grievance he had pending. [*Id.* at 6.] Thomas' termination was ultimately upheld by the Michigan City Board of Works. [DE 76-2 at 3-4.]

**Discussion**

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute about a material fact exists only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A nonmoving party like Thomas is not entitled to the benefit of "inferences that are supported by only speculation or conjecture." *Argyropoulos v. City of Alton*, 539 F.3d 724, 732 (7th Cir. 2008) (citations and quotations omitted).

3

There are two ways for a plaintiff to overcome a summary judgment in a Title VII case – the familiar indirect and direct methods of proof. *Silverman v. Board of Education of Chicago*, 637 F.3d 729, 733 (7th Cir. 2011). But recently, several judges on the Seventh Circuit have expressed some reservations about whether these clunky constructs still serve any useful purpose. *See, e.g.*, *Coleman v. Donahue*, 667 F.3d 835, 862-63 (7th Cir. 2012) (Wood, J., concurring); *Hitchcock v. Angels Corp., Inc.*, 718 F.3d 733, 737 (7th Cir. 2013); *see also Smith v. Chicago Transit Auth.*, No. 14-2622, 2015 WL 7423824, at *4 (7th Cir. Nov. 23, 2015). The various multi-factor tests that have developed over the years in both indirect and direct method of proof cases are frequently a maze that often cloud the decision-making process rather than enhance it. As Judge Wood described it in her concurrence in *Coleman*, a much simpler way to proceed would be to ask the following question when confronted with a summary judgment motion: has the plaintiff presented evidence that she is a member of a protected class and suffered an adverse employment action that a rational juror could conclude was taken against her on account of her protected class and not for a non-discriminatory reason? *Coleman*, 667 F.3d at 863.

There is much to be said for Judge Wood's simpler approach to the question. But no matter what formula is used — the indirect method, the direct method, or Judge Wood's formulation — Thomas cannot prevail in this matter. The simple fact of the matter is that the City has presented admissible evidence that Thomas was terminated for reasons having nothing to do with his race, and Thomas has presented me *no*

*admissible evidence* to the contrary. Whether Thomas was treated fairly or unfairly or whether it was good business practice to have terminated him under these conditions are questions that are neither here nor there. This is because, as it has often been said, federal judges do not sit as super-personnel departments reviewing decisions of employers. *See, e.g., O'Reagan v. Arbitration Forums, Inc.*, 246 F.3d 975, 984 (7th Cir. 2001). The sole question is whether the decision was based on some type of discriminatory animus. And there simply is no evidence that it was in this case.

Before diving into the merits, there is a preliminary matter that needs to be addressed relating to the affidavit that Thomas has submitted with his response to the summary judgment motion. In the affidavit, Thomas lists several alleged examples of racial animus in the workplace including that he "heard" that Strader's computer contained racist materials, and that someone else had "heard" from another person that Strader made a statement to someone that he wasn't going to hire an African-American bus driver applicant as long as there was a white applicant applying. Thomas also said in his affidavit that there were more disciplinary write-ups on white employees than African-American employees. [DE 76 at 2-3.]

The City has moved to strike Thomas' declaration arguing that it is based entirely on his opinions, hearsay, speculation, and rumors. [DE 78 at 1.] The City is correct that much of Thomas' declaration contains self-serving statements that are not based on personal knowledge and are without factual support in the record. For example:

- "My present co-worker Vail Anderson say[sic] that she heard the superintendent discuss with the director of the Street Department David Farmer that there was numerous racist material on [Strader's] computer." [DE 76-1 at 4.]

- "It was said that the Director made a statement that he wasn't going to hire a black applicant Shona as long as there was a while applicant applying. Shona filed a lawsuit with the EEOC and the Civil Liberty Commission. After the Director Robert Strater[sic] was fired, the City hired Shona to stop her suit. It is still on file and shut her up. No investigation was done." [*Id.*]

- "Used to be City Council Woman Virginia Martin said that use to be my Union Stewart[sic], now Director of the Michigan City Transit Department said she heard the Director Robert Strater[sic] tell a white employee to stop bumping stop signs, meaning he didn't stop, no write ups." [*Id.* at 5.]

- He makes an unsupported assertion that African-American were written up more often. [*Id.*]

- He makes an unsupported assertion that two days after he was fired, Rosetta Loggins left passengers at a high school and the incident was not investigated. [*Id.*]

This evidence is either hearsay or not based on Thomas' personal knowledge. And "[a] party may not rely on inadmissible hearsay to oppose a motion for summary judgment." *Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009); *see also Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560, 562 (7th Cir. 1996) (same).

There is of course nothing wrong with relying on self-serving statements to defeat summary judgment. *Payne v. Pauley*, 337 F.3d 767, 773 (7th Cir. 2003). But the statements must be based on admissible evidence. It is one thing for Thomas to swear that he heard Strader make racists comments. That type of evidence might be "self-serving" but it would surely be admissible to help defeat summary judgment. (It would be an admission of a party opponent in a representative capacity. *See* Fed. R.

6

Evid. 801(d)(2)(A)). But a close reading of Thomas' affidavit indicates that he is isn't testifying to something *he* heard from Strader. Rather, he is relaying what others told him that Strader may have said. This is hearsay and not admissible. For these reasons, I will grant in part and deny in part the City's motion to strike the declaration [DE 76-1], striking the portions discussed above and the like that are merely hearsay, speculation, and rumors and, therefore, inadmissible and insufficient to resist the grant of summary judgment. But because there are admissible portions of the declaration, I do not believe that it was filed in bad faith, and the City's request for attorney fees will be denied.[1]

In addressing the merits, I'll start with the indirect method: In order to establish a *prima facie* case of intentional discrimination under the indirect method Thomas must demonstrate that 1) he is a member of a protected class; 2) his employment performance was satisfactory; 3) he experienced an adverse employment action; and 4) he was treated less favorably than one or more similarly situated employees outside of his protected class. *See Burks v. Wis. Dep't of Transp.*, 464 F.3d 744, 750-51 (7th Cir. 2006). If he establishes a *prima facie* case, a presumption of discrimination is raised, and the burden shifts to the City to proffer a legitimate, nondiscriminatory reason for its action.

---

[1] The City also moves to strike Thomas' Exhibit 3 [DE 76-3] to his response, which contains a copy of the Michigan City Board of Works meeting minutes from March 4, 2013 as well as a copy of an article from the New Dispatch dated March 19, 2013. Thomas conceded that the article on page two of the exhibit should be stricken. [DE 82 at 9.] The City's Motion to Strike is therefore granted as to that page, but denied as to the meeting minutes because the City designated the *same exact exhibit* to their Motion for Summary Judgment. [DE 63-2 at 7.] I note the irony of the City's argument that Thomas is essentially wasting time by designating these documents, when the City designated the meeting minutes *before* Thomas.

*Id*. at 751. If the City proffers a legitimate, nondiscriminatory reason for its action, the burden shifts back to Thomas to produce evidence that demonstrates the City's proffered reason is either not credible or more likely than not pretextual. *Id*.

Thomas is African-American and is therefore a member of a protected class, and he obviously experienced an adverse employment action when he lost his job. Next we look at whether his employment performance was satisfactory. Let's assume for the moment that Thomas was performing his job in a satisfactory way; he says he was although the video proof strongly suggests that he violated state law and federal regulations when he failed to come to a complete stop at a train crossing. But in any event, the last prong of the *prima facie* case dooms his case because Thomas has failed to demonstrate that other similarly situated employees not in the protected class were treated more favorably than he was.

In order for an individual to be similarly situated to Thomas, he would have to prove "that the individual is directly comparable to [him] in all material respects. Factors relevant to this inquiry include whether the employees reported to the same supervisor, whether they were subject to the same standards and whether they had comparable education, experience and qualifications." *Burks,* 464 F.3d at 751 (quotation marks and citations omitted); *see also Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 680 (7th Cir. 2002).

The question about whether someone is similarly situated to the plaintiff is a flexible inquiry. As the Seventh Circuit has made clear, "The Supreme Court 'never

intended' the requirement as 'rigid, mechanized, or ritualistic . . . [but] merely a sensible, orderly way to evaluate the evidence in light of common experience as it bears on the critical question of discrimination.'" *Coleman*, 667 F.3d at 846 (quoting *Furnco Construction Corp. v. Waters*, 438 U.S. 567, 577 (1978)). Yet Thomas has not done enough to satisfy this inquiry. Thomas proffers Rosetta Loggins as a "similarly situated Caucasian employee who received more favorable treatment, under the same or similar circumstances, on the basis of her race." [DE 76 at 3.] At his deposition and in his declaration, Thomas stated that two days after he was fired, Loggins left passengers at a high school, but suffered no consequences as a result. [DE 76-6 at 17-18.] This information is insufficient to satisfy the inquiry because Thomas has no personal knowledge of the incident. Thomas no longer was employed by the City at the time the incident allegedly occurred and Thomas has no personal knowledge as to whether she actually was disciplined as a result of the incident. And Thomas did not designate any additional evidence — such as testimony of the City officials who were deposed — regarding the Loggins incident.

But even if I accept Thomas' testimony as being accurate, there is really no way of knowing whether Thomas' situation is similar to Loggins'. It seems clear that the alleged incident involving Ms. Loggins —leaving passengers at the high school — is not, to my knowledge, a violation of Indiana law or federal regulations like Thomas' failure to stop before a railroad crossing. Because Thomas has failed to produce admissible evidence that Loggins was similarly situated to him, summary judgment is appropriate

9

*Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560, 562 (7th Cir. 1996) ("[A] party may not rely upon inadmissible hearsay in an affidavit or deposition to oppose a motion for summary judgment.")

I will note that even if Thomas were to get past the *prima facie* case, he also has failed to establish that the City's stated reason for terminating him was a pretext. The evidence shows that it was not. Thomas violated Indiana law and federal regulations when he failed to stop at a railroad crossing, which, as he was warned almost three weeks prior, could be expected to result in termination. Thomas attempts to cloud the issue by arguing that the bus speedometer and video monitoring system were not synchronized to accurately reflect his speed during the railroad crossing incident, and the bus monitoring system, indicating that his speed did not reach 0 mph before the railroad crossing, was not properly calibrated. [DE 76 at 2.] But that is of no matter, as the video clearly shows that Thomas did not come to a complete stop. And even if an argument can be made, as Thomas tries to, that he paused ever-so-briefly at the railroad crossing, and the pause is not properly reflected on the video, based on what *is* reflected, it was still reasonable for the City to conclude that he did not stop. In other words, even if the City's decision was factually wrong – and I don't think it was based on my view of the videotape – it wouldn't amount to pretext. This is because a pretext is a lie or a phony explanation that covers up the real reason for the adverse employment action. *Millbrook v. IBP, Inc.*, 280 F.3d 1169, 1175 (7th Cir. 2002).

Thomas also tries to cloud the issue by arguing that the City improperly considered his six-and-a-half year disciplinary history when making the decision to terminate him, when it only should have considered the two most recent years. This argument is a nonstarter because he provided no evidence that this actually was the case and, furthermore, the Employee Corrective Action Notice regarding his termination notes only his behavior that day – failure to stop at the railroad crossing, speeding, following at an unsafe distance, unsafe lane change – and that he was suspended a total of three time *in the last 12 months* for failure to follow instructions. [DE 63-2 at 3-4.] And even if the City had considered his six-and-a-half year disciplinary history, and that act had been improper, it is of no matter because the railroad crossing incident, in and of itself, was a sufficient reason to terminate him under Strader's memorandum.

In sum, there is simply no evidence that the stated reason for termination was a pretext for discrimination. Indeed, Mr. Strader made it clear three weeks prior to this incident that failing to abide by this important safety regulation was grounds for termination.

Thomas' case likewise fails under the direct method of proof. "Under the direct method [of proving discrimination], a plaintiff must come forward either with direct or circumstantial evidence that 'points directly to a discriminatory reason for the employer's action.'" *See Burks*, 464 F.3d at 750 n.3 (citation omitted). Under the direct method of proof, circumstantial evidence of discrimination includes things like suspicious timing, ambiguous statements, or behavior toward or comments directed at

other employees in the protected group. It can also include evidence that similarly situated employees outside the protected class received systematically better treatment. Or it could include situations where an employee was qualified for and fails to receive the desired treatment, and the employer's stated reason for the difference is unworthy of belief. *See, e.g.*, *Hasan v. Foley & Lardner, LLP*, 552 F.3d 520, 529 n.4 (7th Cir. 2008).

Thomas has failed to point to sufficient evidence showing that his race motivated the City's decision to terminate his employment. At his deposition, Thomas testified that his boss, Robert Strader, "boldly let you know that he was a bigot" but, when pressed, could not give examples of anything Strader did to convey this and testified that "it's just the way it was going." [DE 76-6 at 10-11.] While Thomas speculated that management was out to fire the African-American employees, he testified that he never heard anyone in management say that they were targeting certain individuals to be fired. [*Id.* at 4-7.]

Thomas also claims that Strader refused to hire Tyshona Hales, who Thomas claims was a qualified African-American applicant, and that she was later hired after Strader's termination and after she filed an Equal Employment Opportunity Commission claim against the City for refusing to hire her because of her race. [DE 76 at 3.] Strader testified that Hales accused him of wrongfully denying her a position as a bus driver, but that his denial was the result of a bad written and driving test performances and that Robert Zonder, the Mayor of Michigan City, did not disagree with Strader's decision not to hire her. [DE 76-2 at 5, 7.] Zonder testified that Hales was

eventually hired after she reapplied for the position because the pool of applicants was smaller and it seemed like she was better prepared. [DE 76-4 at 33.] Without more, none of this evidence directly shows that Strader was a racist and refused to hire Hales because she is African-American. It may be the case that she was not qualified when she first applied (as Strader and Zonder testified) or that there were other applicants who were simply *more* qualified than Hales and they were hired first. Thomas only opines that the decision not to hire Hales initially was racially motivated and can point to no direct evidence to show that was actually the case. This opinion testimony, without more, is insufficient to prove discrimination. *Visser v. Packer Eng'g Assocs., Inc.*, 924 F.2d 655, 659 (7th Cir. 1991) ("Inferences and opinions must be grounded in observation or other first-hand personal experience. They must not be flights of fancy, speculations, hunches, intuitions, or rumors about matters remote from that experience.")

In sum, without the declaration, Thomas is unable to point to any admissible evidence to support his contention that his race motivated the City's decision to terminate his employment. So his case fails under the direct proof method as well.

It might well be the case that Thomas was treated unfairly by his former employer, the City of Michigan City. That's not for me to decide. This is because getting treated unfairly isn't the same thing as getting treated unfairly *because you're a member of a protected class.* Thomas needed to point me to admissible evidence showing that the latter is what happened if he wanted to get a discrimination claim past the summary

judgment stage, and he simply hasn't done that. Therefore, summary judgment is warranted.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART AND DENIES IN PART** Michigan City's Motion to Strike [DE 77]. In addition, the Court **GRANTS** the pending Motion for Summary Judgment [DE 62] in its entirety. Because this ruling disposes of all the issues in this case, the clerk shall **ENTER FINAL JUDGMENT** in favor of the City of Michigan City and against Vincent Thomas. The clerk shall treat this civil action as **TERMINATED**. All further settings in this action are hereby **VACATED**.

**SO ORDERED.**

ENTERED: December 16, 2015

 s/ Philip P. Simon

**PHILIP P. SIMON, CHIEF JUDGE**

**UNITED STATES DISTRICT COURT**